People v Cathlin (2022 NY Slip Op 50985(U))

[*1]

People v Cathlin (Michael)

2022 NY Slip Op 50985(U) [76 Misc 3d 137(A)]

Decided on October 12, 2022

Appellate Term, First Department

Published by New York State Law Reporting
Bureau pursuant to Judiciary Law § 431.

As corrected in part through October 17,
2022; it will not be published in the printed Official Reports.

Decided on October 12, 2022
SUPREME COURT, APPELLATE TERM, FIRST
DEPARTMENT

PRESENT: Brigantti, J.P., Tisch, Michael, JJ.

570042/20

The People of the State of New
York, Respondent, 
against
Michael Cathlin,
Defendant-Appellant.

Defendant appeals from a judgment of the Criminal Court of the City of New York,
New York County (Josh E. Hanshaft, J.), rendered November 25, 2019, after a nonjury
trial, convicting him of two counts of attempted forcible touching and one count of
sexual abuse in the third degree, and imposing sentence.

Per Curiam.
Judgment of conviction (Josh E. Hanshaft, J.), rendered November 25, 2019,
affirmed.
Defendant's present challenge to the legal sufficiency of the evidence supporting his
conviction for attempted forcible touching (two counts) (see Penal Law
§§ 110.00, 130.52[1],[2]), and third-degree sexual abuse (see Penal
Law § 130.55), is unpreserved since defendant's dismissal motion "was not
specifically directed at the alleged insufficiency that he now raises on appeal" (People v Danielson, 40 AD3d
174, 176 [2007], affd 9 NY3d 342 [2007]), and we decline to review it in the
interest of justice. As an alternative holding, we reject it on the merits. We also find that
the verdict was not against the weight of the evidence (see People Danielson, 9
NY3d at 348-349). There is no basis for disturbing the court's determinations concerning
credibility in which it accepted the victim's account of the incident and rejected
defendant's testimony. The court rationally found that defendant's conduct, placing his
hand under the victim's dress and "rubb[ing] up" her thigh towards her vagina while
seated next to her on a subway car, prompting her to stand up screaming, was intentional
touching for the purpose of sexual gratification (see People v Lopez, 168 AD3d 418, 419 [2019], lv
denied 33 NY3d 1033 [2019]).
Defendant's claims of error in evidentiary rulings do not require reversal. The court
properly admitted the victim's statements to a passenger, who testified at trial that she
immediately went to console the victim, and a police officer, made within a few minutes
after the incident, as excited utterances (see generally People v Johnson, 1 NY3d
302 [2003]). Both statements were clearly precipitated by a startling event, the unwanted
sexual contact, while the victim, described by both as "shaking," "crying" and "scared,"
was still visibly upset (see
People v Brown, 177 AD3d 409 [2019], lv denied 34 NY3d 1126
[2020]; People v Johnson,
129 AD3d 486 [2015], lv denied 26 NY3d 1089 [2015]). In any event, any
error in the admission of the statements was harmless in light of the overwhelming
evidence of defendant's guilt (see People v Crimmins, 36 NY2d 230, 241-242
[1975]). Defendant's contention regarding the continued [*2]viability of the excited utterance exception to the hearsay
rule is not preserved for appellate review (see People v Almonte, 33 NY3d 1083,
1084 [2019]). 
We reject, as did Criminal Court, defendant's contention that he was entitled to a jury
trial under the Sixth Amendment to the U.S. Constitution. Defendant acknowledges that
the three month maximum prison term he faced was not long enough to avoid the initial
presumption that the charged class B misdemeanor offenses were petty under the law
then in effect (see CPL 340.40[2][FN1]
; People v Urbaez, 10 NY3d 773 [2008]), and he failed to "demonstrate that any
additional statutory penalties, viewed in conjunction with the maximum authorized
period of incarceration, are so severe that they clearly reflect a legislative determination
that the offense in question is a 'serious' one" (People v Suazo, 32 NY3d 491, 497
[2018]; quoting Blanton v City of North Las Vegas, Nev., 489 US 538,
543 [1989]). The requirement to register under the Sex Offender Registration Act does
not render an otherwise petty offense "serious" for purposes of the right to a trial by jury,
as this requirement is not a penalty, but a remedial, collateral consequence of the
conviction (see People v Gravino, 14 NY3d 546, 556-558 [2010]; People v Wrighton, 82 AD3d
608 [2011], lv denied 17 NY3d 810 [2011]). The other collateral
consequences of the conviction, such as the potential loss of defendant's security guard
license, do not "invariably flow" from a conviction so as to transform the underlying
petty crimes into serious crimes for which a jury trial is required (People v Suazo,
32 NY3d at 505-506, 506 n 7).
Contrary to defendant's contention, the fact that prior to its amendment, CPL
340.20[2] authorized a jury trial for class B misdemeanors outside of New York City
while mandating a "single judge trial" in the City for offenses carrying a maximum
prison term "of not more than six months" did not amount to an equal protection
violation (see Matter of Hogan v Rosenberg, 24 NY2d 207, 216-218
[1969]["[t]he Supreme Court has recognized that territorial discrimination as between
different States and even as between different parts of the same State is not of itself
violative of the equal protection clause, even if the State has no reasonable basis for
making such a distinction"], revd on other grounds sub nom. Baldwin v New
York, 399 US 66, 73-74 [1970]). The equal protection clause does not mandate
absolute equality of treatment but merely prescribes that, absent a fundamental interest or
suspect classification, a legislative classification be rationally related to a legitimate state
purpose (see Marshall v United States, 414 US 417, 422 [1974]; People v
Drayton, 39 NY2d 580, 584-585 [1976]). "[T]he overburdening caseload existing in
the criminal courts of the highly populated City of New York has given rise to
extraordinary and unique circumstances which manifests the reasonable basis for making
such a distinction" (Matter of Hogan, 24 NY2d at 218; see People v Urbaez,
10 NY3d at 773["[e]specially in New York City, with its high volume of
misdemeanor cases, [CPL 340.20[2]] furthers the important public interest of effective
judicial administration"]; People v Foy, 88 NY2d 742, 744-745 [1996]; see
generally People v Denning, 98 Misc 2d 369 [App Term, 1st Dept 1979]).
Nor has the State targeted either citizens or noncitizens for disparate treatment.
Defendant was properly tried by a single judge like all other similarly situated defendants
tried in a New York City criminal court on class B misdemeanors. Although
Suazo held that "a [*3]noncitizen defendant
charged with a deportable crime is entitled to a jury trial under the Sixth Amendment"
(32 NY3d at 508), it is the severity of the penalty, not the defendant's alienage, that
accords him a jury trial. As the Court of Appeals made equally clear in Suazo, if
defendant, like the noncitizen defendant facing deportation, can show that he faces
sufficiently severe governmentally imposed consequences beyond the three month
sentence if convicted on the class B misdemeanors he faced, he too would be accorded a
jury trial. 
We have considered defendant's remaining contentions and find them
unavailing.
All concur
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
Clerk of the Court
Decision Date: October 12, 2022

Footnotes

Footnote 1:The New York State
Legislature subsequently amended CPL 340.40(2), effective July 1, 2022, and extended
the right to a jury trial to all misdemeanors.